36 C.C.P.A.(Patents)

BURNS v. CURTIS (five cases).

Patent Appeal Nos. 5530–5534.

United States Court of Customs and Patent Appeals.

Feb. 1, 1949.

029 (appeal No. 5531), 81,030 (appeal No. 5532), 81,031 (appeal No. 5533), and 81,-684 (appeal No. 5534) to appellee, Russell R. Curtis. Appellee is the senior party in each of the interferences. Accordingly, the burden was upon appellant to establish priority of invention by a preponderance of the evidence.

For the purpose of the hearing in this court, the records in the several interferences were consolidated. Accordingly, we shall dispose of the issues presented in one opinion.

The principal decision of the Board of Interference Examiners, upon which the other decisions of that tribunal are dependent, was made in interference No. 81,-029 (appeal No. 5531). The issues in that appeal, therefore, will be considered first.

Appeal No. 5531.

Interference No. 81,029.

This interference is between appellant's application, No. 437,478, filed April 3, 1942, and appellee's patent, No. 2,306,298, issued December 22, 1942, on an application filed September 5, 1941.

The issue is defined in six counts of which count 1 is illustrative: "1. A pump assembly comprising a casing defining a volute chamber having a central inlet and a peripheral outlet, a pump impeller in said casing for centrifugally discharging liquid from the inlet into the volute chamber, and a propeller mounted on said impeller and disposed in the path of liquid to the inlet, said propeller being arranged for transverse communication with a body of liquid surrounding the incoming liquid to the inlet, and said propeller having blades adapted to beat out bubbles of gas and vapor from the liquid before the liquid reaches the volute chamber."

Max W. Zabel, Edward C. Gritzbaugh and Benton Baker, all of Chicago, Ill., for appellant.

The Firm of Charles W. Hills, of Chicago, Ill. (J. Arthur Gross and Carlton Hill, both of Chicago, Ill., of counsel), for appellee.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL and JOHNSON, Judges.

HATFIELD, Judge.

These are appeals in interference proceedings from the decisions of the Board of Interference Examiners of the United States Patent Office awarding priority of invention of the subject matter defined by all of the counts in each of interference Nos. 80,772 (appeal No. 5530), 81,-

The invention in issue is a liquid pump assembly which is primarily designed for feeding fuel to airplane engines, although the counts are not expressly limited to such use. As explained in appellant's application here involved, the reduction in atmospheric pressure, at high altitudes, results in the release of gas bubbles in the fuel which may produce faulty fuel feeding or even a com-

plete interruption of the fuel supply to the engine.

In the system disclosed by each of the parties to this interference there is provided a so-called booster pump which withdraws the fuel from the tank and feeds it to the main pump which, in turn, feeds it to the engine. The booster pump is of the centrifugal type and is mounted immediately below the bottom of the fuel tank. In order to eliminate gas from the fuel entering the booster pump, each of the parties extends the shaft of the pump upwardly into the tank, through the central inlet opening of the pump and mounts an impeller to the end of the shaft. The impeller is mounted for rotation in a horizontal plane just above the bottom of the tank and serves to agitate the fuel and throw the gas bubbles outwardly and away from the inlet opening of the pump. An annular ring is mounted above the impeller and the liquid supplied to the impeller passes downwardly through the ring. The gas bubbles liberated by the impeller pass upwardly, outside of the ring, to the top of the fuel tank without passing to the pump.

The Board of Interference Examiners accorded appellant, Burns, a conception date of April 16, 1941, but held that he had not established an actual reduction to practice and was, therefore, restricted to his filing date, April 3, 1942, for reduction to practice. The board further held that appellant was not diligent from a time just prior to September 5, 1941, when the application on which appellee's patent issued was filed, until April 3, 1942. Appellee was, therefore, held to be entitled to an award of priority on the basis of his filing date.

The basis of the board's holding that appellant had not established an actual reduction to practice was appellant's failure to test the structures on which he relies in actual use on an airplane. The tests relied on by appellant were made, in the spring of 1941, in a laboratory under conditions which allegedly simulated operating conditions in an airplane as closely as possible.

██ Although the counts are not limited to airplane systems, the devices of both parties were designed with that purpose in mind, and the tests of appellant's devices were intended to show their utility for that purpose. Certainly the laboratory tests of appellant's devices were not intended to establish their utility for any practical purpose other than for use on airplanes. The reduction to practice of a device must amount to a demonstration that it is satisfactory for the purpose for which it is designed to be used. See McKee v. Stevens, 79 F.2d 914, 23 C.C.P.A., Patents, 701, and Chandler v. Mock, 150 F.2d 563, 32 C.C.P.A., Patents, 1183. In the last-cited case we held that a fuel supply means for a carburetor was not reduced to practice without actual tests in an engine, even though the interference count was not limited to use with an engine. In the instant case, we are of opinion that the invention in issue could not be reduced to practice until it was demonstrated that it was satisfactory for use on airplanes at high altitudes. It remains to be decided whether this could be done by laboratory tests.

It seems unlikely that the conditions encountered in the use of an airplane, as regards such matters as temperature, vibration, and pressure, could be duplicated in a laboratory. Furthermore, in appellants tests, *the fuel was not supplied to an engine but was circulated through the pumps and back to the tank.* It is alleged by counsel for appellant that the recirculation employed in appellant's tests would have no effect on the operation, but it is not clear that this would necessarily be true. The board pointed out that the return of the fuel to the tank would cause agitation of the liquid in the tank and this would tend to drive off gas from the liquid and that it could not be said with certainty that fuel which had been circulated several times through the impeller and pumps would be identical, so far as gas or vapor content is concerned, with fuel which had never left the tank.

A further and an important distinction between the tests of appellant's devices and actual airplane operating conditions is that in the tests the engine pump was driven by an electric motor at a constant speed, whereas in an airplane the engine pump would ordinarily be driven by the engine at varying speeds. Although it is argued by

counsel for appellant that the distinction last referred to is irrelevant, we are of opinion that such is not the case. It is probable that a pump assembly which would operate satisfactorily when the engine pump was driven by an electric motor at a *constant speed* would not be satisfactory when that pump was driven by an airplane engine at *varying speeds*. We are confirmed in this view by the testimony of appellant's witness, William J. Lockett, an engineer employed by Douglas Aircraft Company, who stated that: "I believe our report shows satisfactory engine driven fuel pump pressures could be maintained on the test stand with booster pump pressures as low as two pounds. *However, that does not necessarily mean that that condition would prevail in flight.*" (Italics ours.)

The same witness, in answer to a question as to whether appellant's laboratory tests indicated satisfactory operation, said: "From a test standpoint, yes, but not necessarily from actual operating conditions. *In other words, the proof of the pudding is always the final flight test.* I have been fooled too many times in my 23 years of experience in the aircraft business." (Italics ours.)

The quoted testimony by an experienced engineer affords clear evidence that appellant's laboratory tests cannot be accepted as establishing successful operation under service conditions.

■ We have carefully considered the evidence and arguments presented by counsel for appellant but are of opinion that none of the tests made by appellant, or on his behalf prior to April 3, 1942, was sufficient to establish that any device corresponding to any of the counts of this interference would operate successfully in service on an airplane. We, therefore, agree with the Board of Interference Examiners that appellant has not established a reduction to practice of the invention in issue prior to the filing of his application here involved.

■■ It follows that appellant was subsequent to appellee in reducing the invention to practice and, even assuming that appellee is entitled to no date earlier than his filing date, September 5, 1941, for conception of the invention and its constructive reduction to practice, the burden was upon appellant to establish diligence from a time just prior to that date until April 3, 1942, when appellant's application was filed. Although there is some evidence of activity during this period, such as the making of drawings and of prolonged tests, there is nothing to support a holding of reasonably continuous activity throughout the period. Moreover, it is clear from the testimony of appellant that most, if not all, of this activity was directed toward commercial production. It is well settled that efforts to exploit an invention commercially do not constitute diligence in reducing it to practice. See Hurd v. Smith, 97 F.2d 147, 25 C.C.P.A., Patents, 1137; Preston et al. v. White, 97 F.2d 160, 25 C.C.P.A., Patents, 1219; and Petersen v. Thomas, 56 App.D. C. 113, 10 F.2d 908.

■ It is argued by counsel for appellant that the devices tested in laboratories were of such a nature as to be capable of actual use on an airplane. If such was the case, it would have been a relatively simple matter to arrange for a test under actual service conditions. In this connection it may be observed that another device, not here involved, designed by appellant to accomplish substantially the same purpose as the present invention, was tested under actual flight conditions not long prior to appellant's laboratory tests of the instant invention. Furthermore, so far as appears from the record, appellant could have effected a constructive reduction to practice by the filing of an application for a patent at any time between September 5, 1941, and April 3, 1942. Under the related circumstances, we are of opinion that appellant was lacking in diligence during the critical period and, accordingly, is not entitled to an award of priority of the invention defined by the counts in this interference.

For the reasons stated, the decision of the Board of Interference Examiners is affirmed.

Affirmed.

Appeal No. 5530.

Interference No. 80,772.

This interference involves appellant's application, No. 437,478, filed April 3, 1942,

and appellee's patent, No. 2,306,297, issued December 22, 1942, on an application filed August 14, 1941.

The issue is defined in seven counts, of which counts 1 and 2 are illustrative. They read:

"1. In a pump device for beating out bubbles of gas and vapor from a liquid flowing thereto and for pressuring the bubble-freed liquid, the improvement of a relatively shallow annular guide shield adapted to be mounted in the liquid in spaced relation from said pump device to define a localized inlet flow path to the device and to cooperate with the pump device to define therebetween a flow path for the gas and vapor bubbles in the liquid.

"2. In a gas and liquid separating device including a throat receiving gas and liquid from a pond, and an impeller effecting circulation of liquid in the pond and separation of gas bubbles from the liquid, the improvement comprising a filter in said pond surrounding said throat to strain liquid flowing to the throat, and means in said filter space from the throat to deflect gas bubbles from the impeller through the filter."

The interference is between the same application of appellant involved in appeal No. 5531 and another patent issued to appellee, as hereinbefore stated. The same evidence was submitted by the parties in both cases.

The invention herein issue relates to airplane fuel feed systems of the general type involved in appeal No. 5531, the involved counts being directed to an arrangement of a screen and shield above the inlet of the booster pump in such a manner as to reduce the amount of gas passing through that pump to the engine.

We have given careful consideration to the invention defined by the involved counts and the evidence submitted. For the reasons stated in our decision in interference No. 81,029 (appeal No. 5531) we are of opinion that appellant is not entitled to an award of priority of invention. Accordingly, the decision of the Board of Interference Examiners is affirmed.

Affirmed.

## Appeal No. 5532.

## Interference No. 81,030.

This interference involves appellant's application, No. 437,478, filed April 3, 1942, and appellee's patent, No. 2,306,299, issued December 22, 1942, on an application filed October 18, 1941.

The issue is defined in six counts, of which count 1 is illustrative. It reads: "1. In a pump construction including a pump casing having an inlet throat, an impeller with pumping vanes underlapping the throat, and agitating vanes positioned to act on material fed to the pump before the material reaches the pumping vanes, the improvement which comprises a guide shield mounted in advance of the throat and the agitating vanes defining an annular bell mouthed passage to the throat in localized transverse communication with the exterior of the shield."

The interference involves the same application of appellant involved in appeal No. 5531, but a different patent of appellee. The subject matter in issue is a liquid pump assembly for use on airplanes and is similar to the invention involved in appeal No. 5531, and the same evidence is relied on by the parties in each case.

In our decision in appeal No. 5531, we held that the laboratory tests relied on by appellant were insufficient to establish a reduction to practice of the invention there in issue.

For the reasons stated in our decision in appeal No. 5531, we are of opinion that appellant is not entitled to an award of priority of invention. Accordingly, the decision of the Board of Interference Examiners is affirmed.

Affirmed.

## Appeal No. 5533.

## Interference No. 81,031.

This is an interference between appellant's application, No. 437,478, filed April 3, 1942, and appellee's patent, No. 2,306,298, issued December 22, 1942, on an application filed September 5, 1941.

The issue involves six counts, of which count 1 is illustrative. It reads: "1. A

booster pump construction including a casing defining a volute chamber having a peripheral outlet and an annular inner opening, a throat ring defining a central inlet to the annular opening of the volute chamber, an impeller having vanes underlying the throat ring to impel liquid from the inlet through the opening into the volute chamber, a shaft extending from the impeller through the inlet of the throat ring, and a propeller mounted on said shaft having blades disposed above the throat ring arranged for free transverse communication with a body of liquid surrounding the liquid flowing to the inlet."

The instant interference involves the same application of appellant and the same patent of appellee which are involved in appeal No. 5531. The same testimony was submitted in the two cases and, although different claims are involved, appellant relies on the same activities for reduction to practice and diligence in both cases.

The invention in issue is sufficiently described by the quoted count.

For the reasons stated in our decision in appeal No. 5531, we are of opinion that appellant is not entitled to an award of priority of the invention defined by the counts in issue. Accordingly, the decision of the Board of Interference Examiners is affirmed.

Affirmed.

Appeal No. 5534.

Interference No. 81,684.

The interference is between appellant's application, No. 531,937, filed April 20, 1944, as a division of application No. 437,478, filed April 3, 1942, and appellee's application No. 406,277, filed August 11, 1941.

The issue is defined in three counts. Count 1 is illustrative. It reads: "1. The method of eliminating vapor lock in an airplane fuel system and stabilizing volatile liquid fuel for high altitude performance which comprises providing a pond of volatile liquid fuel, flowing fuel under hydraulic head pressure from the pond, agitating the flowing fuel about to leave the pond while it is still in lateral communication with the pond to create a laterally outward flowing stream of bubble-rich liquid, diverting said stream away from the flowing fuel to the surface of the pond where the bubbles may burst to discharge their gases and vapors, recirculating the bubble-liverated [sic] fuel back to the flowing fuel, and pressuring said flowing fuel immediately after it has been agitated to a pressure sufficient to stop spontaneous separation of additional gas or vapor therefrom, whereby volatiles in the fuel which successively become unstable at increasing altitudes are successively eliminated from the pond to provide a stable fuel for pressuring in fully liquid form."

The method involved is sufficiently defined by the quoted count. As will be observed, the method here involved is closely related to the apparatus claims in issue in interference No. 81,029 (appeal No. 5531) and the same evidence is relied upon by the parties in both cases.

We are of opinion that, for the reasons stated in our decision in appeal No. 5531, appellant is not entitled to an award of priority of the invention defined by the involved counts. Accordingly, the decision of the Board of Interference Examiners is affirmed.

Affirmed.