Jerry J. TOMECEK, Appellant,

v.

Donald E. STIMPSON, Appellee.

Patent Appeal No. 74–621.

United States Court of Customs
and Patent Appeals.

April 3, 1975.

Bruce G. Klaas, Edwards, Spangler, Wymore & Klaas, Denver, Colo., attorney of record, for appellant.

Barnes, Kisselle, Raisch & Choate, Detroit, Mich., attorneys of record, for appellee; Basil C. Foussianes, Oliver F. Arrett, Detroit, Mich., of counsel.

Before MARKEY, Chief Judge, RICH, LANE and MILLER, Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

This is an appeal by senior party Tomecek from that portion of the decision of the Board of Patent Interferences awarding priority of invention for the subject matter of count 1 of interference No. 97,610 to junior party Stimpson. We affirm that decision.

The involved Stimpson application is serial No. 802,423, filed February 26, 1969, assigned to Chrysler Corporation. Count 1 was copied by Stimpson, along with counts 2 and 3 which are not now in issue, from the involved Tomecek patent No. 3,513,718, granted May 26, 1970, on an application serial No. 705,661, filed February 15, 1968.

The board held that Stimpson, as junior party, had met his burden of proof by showing an actual reduction to practice on or before the alleged date of October 18, 1967. The board also found no corroborated evidence in support of a conception or reduction to practice of the invention by senior party Tomecek which would overcome an earlier reduction to practice by Stimpson.

### The Subject Matter

As originally declared, the interference involved three counts corresponding to claims 1, 3 and 5 of the Tomecek patent which were copied verbatim as claims 10, 11 and 12 of Stimpson's application. Counts 2 and 3 of the interference are no longer in issue as a result of the board's determination to grant Tomecek's motion to dissolve under Rule 231(a), brought during the motion period, on the ground that Stimpson's applica-

tion lacked support for the language of those counts.

The sole remaining count reads as follows:

In a control system having movable control means in the form of a flexible cable comprising a wire and wire sheath, the wire being operatively connected to a movable actuator device at one end and to a remotely located movable actuable device at the other end, the movable actuator device being movable by application of a normal manipulation force between first and second extreme selection positions, and the movable actuable device being movable between first and second extreme operating positions in response to movement of the actuator device, the invention of adjustment means to locate and correlate the extreme selection positions of the movable actuator device relative to the extreme operating positions of the movable actuable device so that the movable actuator device is located in at least one of the extreme selection positions at the same time that the movable actuable device is located in one of the extreme operating positions and comprising:

first connection means connecting said wire to said movable actual device whereby manipulative movement of said wire causes responding manipulative movement of said movable actuable device,

second connection means connecting said wire to said movable actuator device whereby manipulative movement of said movable actuator device causes responding movement of said wire,

and at least one of the connection means comprising a separate one-piece adjustment clip means having self-releasing resilient spring-like gripping jaw means adjustably connecting the wire to one of the devices and permitting sliding positional adjustment between the wire and the one of the devices by self-release upon application of a predetermined adjustment force in excess of the normal manipulation force when the positions of the devices are not properly correlated thereby to adjust the relative positions of the devices and thereafter permanently holding the wire and the one of the devices in the adjusted position during subsequent applications of normal manipulation forces, said self-releasing resilient spring-like gripping jaw means being formed on the edges of opposite spaced side walls of said clip means and defining an open wire receiving channel permitting the wire to be associated with said jaw means of the clip means by movement transverse to the actuating movement of the wire.

A basic structure upon which the language of the count reads is shown in Fig. 1 of the Tomecek patent, reproduced below.

Fig. 1

In the above drawings, a control system is depicted which includes an actuator device, shown on the left, and an actuable device, shown on the right.

Connecting the actuator device and the actuable device is a flexible cable having an outer sheath 30 and a core wire 28 slidable back and forth therein. The sheath 30 of the flexible cable is fixed at both ends by fastening means 32 and 34. The wire 28 operatively connects a pivotally mounted control lever 19 to a remotely located movable control arm 38, both of which are limited to move back and forth an equal distance. One end of wire 28 is controllably attached as at 42 to control arm 38. The other end of wire 28 is connected to control lever 19 by a clip 40 designed to grip the wire 28 during normal operation of the system but to slip thereon upon the application of excessive force. If the wire 28 is associated with the clip 40 so that, for instance, the length of the wire between the control lever 19 and the control arm 38 is more than the desired length at the extreme position for the control arm 38, self-adjustment may be accomplished by simultaneously moving both the control lever 19 and the control arm 38 toward their extreme positions. When the control arm reaches its extreme position, it is caused to stop, but by the application of an additional predetermined force to the control lever 19, the control lever will be forced to *its* extreme position, causing the clip 40 to slip in a predetermined manner along the wire 28. The invention has for its primary purpose the elimination of the troublesome need for fine manual adjustment of the length of the core wire between the two devices.

## The Record

Appellee Stimpson presented evidence relating to reductions to practice of three embodiments of his invention. We agree with the board, for reasons that will herein become apparent, that only the last reduction to practice, alleged to have taken place at least by October 18, 1967, need be considered. On this date and for some time prior thereto, it was established that Stimpson and witnesses Simon, Briggs, Newtson, and Hinze were all employees of Chrysler Corporation (Chrysler). Simon was Stimpson's supervisor and, with Stimpson and Briggs, worked in the same room. Simon testified that sometime prior to October 18, 1967, he prepared a disclosure document, Stimpson Ex. 8–B–E, based on a control system developed by Stimpson which was in actual existence at the time the document was prepared. This document was forwarded to the patent department of Chrysler, receipt of which was acknowledged on November 28, 1967. The document comprised two sheets of sketches and two sheets of handwritten matter and was signed by Stimpson on October 17, 1967 and witnessed by Simon and Briggs on October 18, 1967.

Stimpson testified that an actual system, as disclosed in Ex. 8–B–E, had been successfully tested by him prior to October 17, 1967, the date on which he signed the exhibit. This test, he stated, involved mounting the clip on a "buck" in simulation of actual conditions of intended use. During the test, the clip was adjusted and misadjusted to ensure that it slipped on the wire and that otherwise the system operated properly. Successful testing of the system was corroborated by both Simon and Briggs, each of whom performed tests on the system and saw them performed by others.

Stimpson Physical Ex. 9 conforms to the basic disclosure in Ex. 8–B–E and Stimpson's application. The elements of this exhibit are all mounted on a board to simulate normal intended use and to provide adjustability between the clip and the core wire. Stimpson testified that Ex. 9 was made by him in the fall of 1967 "prior to the time the switch lab moved to the new location." He further pinpointed the time as prior to the opening of the bird-hunting season on October 20, 1967. This date had special significance as it was his custom to take off a week at the beginning of the season, and he had tagged the exhibit for removal prior to that time. The tag marked "Controls Group 384" was still attached to the exhibit. Exhibit 9 was successfully operated by Stimpson at the taking of testimony to provide adjust-

ment between the clip and the core wire of the sheathed cable.

Simon testified that he had seen and successfully operated Ex. 9 prior to the time the switch lab was transferred to the supervision of Hinze on September 1, 1967. The witness Briggs also testified that he had seen and successfully operated Ex. 9 prior to September 1967.

Subsequent to October 18, 1967, Tinnerman Products, Inc. further developed the cylindrical clip of the invention for the asserted purpose of adapting the clip to mass production methods and subjecting the clip to heat treating processes to secure uniformity in the gripping and slipping action between the clip and the core wire.

After reviewing Stimpson's testimony and the documentary evidence, specifically Ex. 8–B–E, the board opined:

[T]he invention as defined in count 1 was reduced to practice by Stimpson on or before the alleged date of October 18, 1967. We think the evidence clear and convincing that a clip mounted within a system, as defined, was built and sufficiently tested under conditions of intended use prior to that date. The disclosure document includes all the elements and function recited, and both Simon and Briggs related a previously constructed system to the disclosure contained therein. The testing was performed on the system mounted on a "buck" which, according to the description given in the testimony of Stimpson, Simon and Briggs, consisted of the portion and parts of an automobile where the use of the system is contemplated. The fact that during testing the clip slipped on the wire after misadjustment and then held was sufficient to show the system capable of performing its intended function under actual operating conditions.

The board was unpersuaded by Tomecek's argument that further development of the cylindrical clip by Tinnerman subsequent to October 18, 1967 was evidence of a failure to reduce the invention to

practice on or before that date, commenting:

The development work performed on the clip by Tinnerman involved only changes in design for the purpose of adapting the clip to mass production methods, and subjecting the clip to heat treating processes to obtain uniformity in the gripping and slipping action between the clip and the core wire. Such development involved only a commercialization of the invention and did not affect the basic operation and design of the invention as defined in count 1 in any manner.

The board was also unimpressed by Tomecek's argument concerning Stimpson's alleged failure to offer proof that the cylindrical clip in the system made by him had "two edges" as required by the limitation in count 1, namely, "jaw means formed on the edges of opposite spaced side walls of said clip means." Noting that the system which was made and tested by Stimpson did not differ from the clip disclosed in his application insofar as the language of count 1 was concerned, it determined that the argument actually was an untimely attempt by Tomecek to challenge Stimpson's right to make the count.

Tomecek's only documented evidence of a conception or a reduction to practice of the invention prior to October 18, 1967 consists of three exhibits which were introduced into evidence as Exhibits 5, 6, and 7. Exhibit 5, a documentary disclosure, including both sketches and typewritten matter, was prepared and signed by appellant on August 31, 1967. The document was corroborated by only one of the two witnesses signatory thereto, viz. Ruth Ann Scott, who recognized her signature but did not remember seeing the contents thereof or any system. Exhibit 6 is a formal drawing which corresponds to Figs. 9–12 of the Tomecek patent. The only witness offered in support of the drawing was George A. Davis, who witnessed and signed the drawing on September 6, 1967. Davis was only able to corroborate his signature and was unable to testify concerning the spe-

cific content of the exhibit. Tomecek's Ex. 7, a diary, is uncorroborated except for the statement of Tomecek's attorney Klaas, who testified that he received copies. Klaas did not testify to any facts in the diary, nor did he produce any copies of the pages which were allegedly given to him on certain dates. The only other witness who utilized the diary in his testimony was Bologna, and his testimony was not directed to any facts therein but was only that he knew the names of certain individuals referred to therein.

With regard to Ex. 5, the board commented:

> The content of the disclosure document concerns the same general area as the subject matter of count 1, however it fails to disclose all of the specific elements required by the count. For instance, no sheathed cable is disclosed, nor does the corroborating testimony of Scott indicate that a sheathed cable was used or was intended to be used.

Exhibit 6, the board commented further, "discloses only one form of the clip alone and fails to disclose any of the remaining elements of the system defined by count 1."

Lastly, the board found no justification or tenable support for Tomecek's allegation of "spurring" Stimpson and Chrysler into activity as a result of his visit to Chrysler on October 12, 1967.

### Opinion

█ In an interference between an applicant and a patentee whose patent has issued on a prior but copending application, the applicant has the burden of establishing priority of invention by a preponderance of the evidence. Frilette v. Kimberlin, 412 F.2d 1390, 56 CCPA 1242 (1969). At issue in this appeal is whether the board erred in finding that Stimpson, a junior party applicant, has satisfied this burden based upon his evidence of a reduction to practice of the invention defined in count 1 at least by October 18, 1967. A further issue is whether the board properly found that Tomecek,

the senior party patentee, failed to overcome Stimpson's showing of an earlier reduction to practice.

█ Noting that "automobile companies ordinarily fully test new apparatus in vehicles at company proving grounds," Tomecek argues that a successful reduction to practice has to be proven by tests which are more elaborate than those shown by Stimpson's evidence of record. We do not agree. Stimpson's evidence, as the board found, shows that an actual system, as disclosed in Ex. 8–B–E, had been successfully tested prior to October 18, 1967. During the test, according to appellee's testimony, the control system was mounted on a "buck" to simulate actual conditions of intended use. The clip was then adjusted and misadjusted on the wire to make sure that it slipped on the wire and that the system otherwise operated properly.

Successful testing of the system, as disclosed in Ex. 8–B–E, under simulated conditions of intended use prior to October 18, 1967, was corroborated by Simon, who performed tests on the system himself, and by Briggs, who also performed tests and saw them performed by others. We think that Stimpson has shown successful testing of a device which meets all the limitations of the count under conditions which were sufficiently similar to the intended functional setting to prove that the invention would operate satisfactorily. See Paivinen v. Sands, 339 F.2d 217, 226–27, 52 CCPA 906, 918 (1964). See also Knowles v. Tibbetts, 347 F.2d 591, 594, 52 CCPA 1800, 1804 (1965); Voisinet v. Coglianese, 455 F.2d 1064, 1068, 59 CCPA 958, 963 (1972).

Looking to Tomecek's own patent specification to ascertain the intended functional setting, it is disclosed that the invention may be adapted for use in other systems and in other environments than the vehicular control system which is illustrated in the drawings without departing from the "basic principles" therein disclosed. One of Tomecek's own witnesses, furthermore, admitted in substance that there may be potentially significant nonautomotive uses for the

claimed invention. Most importantly, Tomecek's argument regarding the extent of testing required under actual operating conditions is totally undermined by the limitations of the count, which corresponds to claim 1 of his patent and does not require that the system be used in an automobile.

■ The inadequacy of the tests to which Stimpson's control system was subjected prior to October 18, 1967 was further evidenced, Tomecek maintained before the board and reasserts here, by the further development of the cylindrical clip by Tinnerman subsequent to the alleged reduction to practice. We agree with the board that this activity did not negate Stimpson's showing of a reduction to practice because it involved only a commercialization of the invention. See Koval v. Bodenschatz, 463 F.2d 442, 59 CCPA 1113 (1972); Goodrich v. Harmsen, 442 F.2d 377, 58 CCPA 1144 (1971); Hradel v. Griffith, 367 F.2d 851, 54 CCPA 911 (1966).

We share the board's reaction to appellant's argument that Stimpson's alleged reduction to practice has not been proved to meet the count's limitation of "jaw means being formed on the edges of opposite spaced side walls of a clip." We are also convinced that the one-piece adjustment clip shown in Ex. 8–B–E meets the count. The clip has three notches which may be aligned by squeezing the one-piece spiral-shaped clip and pressing the wire transversely down into the channel which is so formed. Edges of the notches on opposite side walls of the clip engage the core wire when the clip is released.

Conception of the invention of count 1 by Tomecek is alleged to have occurred in late August or early September 1967, prior to the date accorded to Stimpson for a reduction to practice. Diligence is purported to have been proved thereafter toward reducing the invention to practice. Tomecek further contends that he has shown "at least an unrebutted presumption" that he "spurred" Stimpson into activity on or about October 12, 1967 by disclosing the invention to Stimpson's supervisor and co-worker at Chrysler, thus causing them to resume activity by preparing the primary evidentiary document relied upon by the board.

Tomecek's Ex. 5, a five-page documentary exhibit, as the board found, is insufficiently corroborated and does not meet the count's limitation because it fails to show either the wire sheath or the control system environment. We agree with the board that Ex. 6 fails to disclose the essential elements of the count. Also, relevant portions of Tomecek's Ex. 7, a diary, are completely uncorroborated except for the statement of his attorney that he received copies of certain pages, none of which were submitted into evidence. The diary entries on or before October 18, 1967 contain no drawing or description of a system which meets the limitations of the count. This court recognizes that the amount and quality of corroborative evidence that will be required is to be determined by a "rule of reason." Anderson v. Pieper, 442 F.2d 982, 58 CCPA 1221 (1971), and cases cited therein. We believe that application of even this liberalized standard to the facts of the present case requires the conclusion that Tomecek's evidence is insufficient to sustain a conception of the invention by him prior to the date accorded his adversary. Tomecek's failure to establish conception of the invention prior to Stimpson's date of reduction to practice makes it unnecessary for us to comment on Tomecek's purported diligence. Also rendered moot by the foregoing remarks is appellant's allegation of "spurring" because, as the board noted in its opinion:

Spurring occurs only after an inventor has reduced his invention to practice and then suppresses, conceals or abandons it until he has knowledge that another is in the field, after which time he resumes activity. However, as the court stated in Stresau v. Ipsen, 77 F.2d 937, 22 CCPA 1352; "The only relevant incitation is that which results from actually learning that a rival is *in* the field. Mere ap-

prehension that some one else might evolve the invention would not, of course, affect the question." Thus Tomecek who failed to have even a conception of the invention on October 12, 1967, the date of his visit, could not have spurred Stimpson into activity even if Stimpson had earlier reduced the invention to practice.

In view of the foregoing, we conclude that the board did not err in awarding priority to appellee. Accordingly, the decision is affirmed.

Affirmed.