**DSL DYNAMIC SCIENCES LIMITED,**
Plaintiff–Appellant,

v.

**UNION SWITCH & SIGNAL, INC.,**
Defendant–Appellee,

No. 90–1395.

United States Court of Appeals,
Federal Circuit.

March 19, 1991.

Bruce E. O'Connor, Christensen, O'Connor, Johnson & Kindness, Seattle, Wash., argued for plaintiff-appellant. With him on the brief was Michael W. Bocianowski.

William B. Mallin, Eckert Seamans Cherin & Mellott, Pittsburgh, Pa., argued for defendant-appellee. With him on the brief were Arnold B. Silverman and David V. Radack.

Before RICH, PLAGER, and CLEVENGER, Circuit Judges.

RICH, Circuit Judge.

DSL Dynamic Sciences Ltd. (DSL) appeals from the March 28, 1990 decision of the United States District Court for the Western District of Pennsylvania in a patent interference proceeding under 35 U.S.C. § 146, awarding priority of invention to Union Switch & Signal, Inc. (Union Switch). We affirm.

## BACKGROUND

The present case relates to "coupler mount assemblies," which are essentially clamps, used to attach various equipment to a railway car coupler. The assembly engages relief holes located in the side of a standard railway car coupler so as to grasp the side of the coupler without interfering with the ability to use the coupler to attach the railway car to another railway car. An example of the type of equipment mounted on the coupler mount assembly is a brake pressure monitor, which measures the brake pressure at the end of a train and transmits the brake pressure measurement to a receiver located in the locomotive.

DSL is the assignee of U.S. Patent No. 4,520,662 (Schmid patent), which issued on June 4, 1985 to Hartmut Schmid, and is based on an application filed on September 9, 1983. Union Switch is the assignee of U.S. Patent Application serial No. 593,778 (Blosnick application), which was filed on March 27, 1984 in the names of Robert Blosnick and James Toms. On April 4, 1986, the Patent and Trademark Office (PTO) declared interference No. 101,561 between the Schmid patent and the Blosnick application. The sole count remaining when the case was heard by the Board of Patent Appeals and Interferences (Board) was the following:

A coupler mount assembly for use with a railway vehicle coupler including a side wall having a convex exterior surface that is provided with a first pair of vertically aligned and spaced-apart relief holes adjacent the coupler tip, and a second pair of vertically aligned and spaced-apart relief holes adjacent the coupler base,

said coupler mount assembly being adapted to mount an equipment housing on the coupler and comprising:

first and second jaw means, each of which includes a hook;

support means to which the equipment housing may be secured, said support means additionally supporting said first and second jaw means for movement relative to each other and so that the hooks thereof project from said support means and face each other; and

clamping means supported by said support means for drawing said first and second jaw means toward each other, whereby said hooks of said first and second jaw means clamp an intermediate portion of the coupler sidewall between the first and second relief hole pairs when said hook of said first jaw means has been inserted into one hole of the first relief hole pair and said hook of said second jaw means has been inserted into a corresponding hole of the second relief hole. pair.

Because the activity relating to conception and reduction to practice by Schmid was performed in Canada, DSL is prevented by 35 U.S.C. § 104 from establishing an invention date earlier than its filing date of September 9, 1983, and that is the date it has relied on throughout the proceedings. Union Switch, on the other hand, maintained before the Board a conception date of January, 1983, and a reduction to practice date of no later than May, 1983.

As evidence to support its claim of reduction to practice, Union Switch presented evidence that around April 1, 1983, the

inventors Blosnick and Toms tested a prototype of their invention by mounting the prototype on a railway car coupler and stepping on it. It also presented evidence of tests that were performed on actual moving trains during May of 1983. Three of these tests, which are referred to in the record as "Test Nos. 3, 4 and 5," involved the use of a prototype of the coupler mount assembly *on cabooses* of trains over distances of 144 miles (Test No. 3), 457 miles (Test No. 4), and 108 miles (Test No. 5). The performance of the prototype in each case was documented with pictures and written reports.

Before the Board, DSL argued that the prototypes used by Union Switch in early 1983 did not fall within the scope of the count and therefore were insufficient to reduce to practice the invention of the count. The Board disagreed, and in a decision dated March 29, 1989, found that Union Switch had established an invention date of no later than May of 1983, and therefore was entitled to priority of the invention of the count.

DSL sought review of the Board's decision via an action under 35 U.S.C. § 146 in the district court. Before the district court, DSL continued to attack the sufficiency of Union Switch's evidence of its reduction to practice, but presented a new theory in doing so. Specifically, DSL argued that the tests were not performed in the intended environment of a coupler mount assembly, and therefore were not sufficient to establish reduction to practice.

In support of this argument, DSL offered testimony, not previously presented to the Board, including the testimony of Hartmut Schmid as an expert in the field. According to DSL, Schmid would have testified that the purpose of the equipment supported by a coupler mount assembly is to obviate the need for a caboose at the end of a train, and that, therefore, the coupler mount assemblies of the count would never in reality be attached to a caboose, but generally would be attached to the coupler *of a freight car.* Schmid further offered to testify that the suspension system is much better on a caboose, which is intended to carry passengers, than that on a freight car, and that consequently while the devices tested by Union Switch in May of 1983 performed satisfactorily when attached to cabooses, those devices would have failed if attached to a freight car.

DSL also offered the testimony of Michael Starr, an employee of Southern Pacific Railroad. According to DSL, Starr would have testified to the failure of several coupler mount assemblies sold to Southern Pacific by Union Switch in 1985, and to the fact that major modifications of those assemblies were required before they were found suitable for use.

Union Switch objected to the newly proferred evidence on various grounds, and a hearing was held to determine the admissibility of the evidence. Subsequently, the district court ruled to exclude the evidence. Schmid's testimony was excluded on the grounds that 35 U.S.C. § 146 only allows for the introduction of evidence not presented to the Board if that evidence was unavailable despite diligence by the proponent of the evidence in obtaining it. The district court found that DSL must have known of the expert testimony of Schmid, the inventor of the Schmid patent, and that DSL deliberately withheld this testimony from the Board. Starr's testimony was excluded as irrelevant because, in the district court's opinion, such evidence concerning commercial failures two years after reduction to practice was not relevant as to reduction to practice.

Having excluded the new evidence, the district court merely reviewed the Board decision, and found no "definite and thorough conviction" that the Board erred. Therefore, the district court affirmed the award of priority to Union Switch. DSL appealed here.

## OPINION

DSL argues strenuously that the district court erred in its interpretation of 35 U.S.C. § 146, causing the testimony of Schmid to be erroneously excluded. DSL also argues that the exclusion of Starr's testimony was error. We, however, do not reach either issue because it is our opinion

that even if this testimony had been presented, Union Switch would still have been entitled to the award of priority of invention. The issue of reduction to practice is a question of law which this court reviews de novo. *Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1376, 231 USPQ 81, 87 (Fed Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1606, 94 L.Ed.2d 792 (1987).

■ It is true, as DSL points out, that proof of actual reduction to practice requires a showing that "the embodiment relied upon as evidence of priority actually worked for its intended purpose." *Newkirk v. Lulejian,* 825 F.2d 1581, 1582, 3 USPQ2d 1793, 1794 (Fed.Cir.1987). This is so even if the "intended purpose" is not explicitly set forth in the counts of the interference. *See, e.g., Elmore v. Schmitt,* 278 F.2d 510, 47 CCPA 958, 125 USPQ 653 (1960); *Burns v. Curtis,* 172 F.2d 588, 36 CCPA 860, 80 USPQ 587 (1949). On the other hand, tests performed outside the intended environment can be sufficient to show reduction to practice if the testing conditions are sufficiently similar to those of the intended environment. *Tomecek v. Stimpson,* 513 F.2d 614, 618, 185 USPQ 235, 239 (CCPA 1975).

The burden of proof here was initially on Union Switch to prove an actual reduction to practice. *See id.* at 618, 185 USPQ at 238. Thus, for Union Switch to prevail, it must show one of two things: (1) that use of a coupler mount assembly with a caboose is an intended purpose of the coupler mount assembly, or (2) that if use with a caboose is *not* an intended use of a coupler mount assembly, the tests performed on a caboose coupler sufficiently simulated the conditions present on a freight car coupler to adequately show reduction of the invention to practice.

The tests performed by Union Switch were extensive. The reports prepared after each test show in detail the distance travelled between various checkpoints and the average speed between the checkpoints. The total distance travelled by the trains in Tests Nos. 3, 4 and 5 was over 700 miles. The average speed was often over 40 miles per hour, and for one 30 minute period was 56 miles per hour. Importantly, a unit was mounted on the coupler mount assembly to measure the forces applied to the assembly. The report for Test No. 4 indicates that the "vibration equipment showed shocks of over 15 G's," but that the coupler mount assembly still operated successfully.

Thus, even accepting DSL's argument that coupler mount assemblies are not intended for use on cabooses,[1] we are convinced that the train tests were sufficient to reduce the invention to practice. Included in DSL's offer of proof is a report by Schmid which compares the device disclosed in the Blosnick application and tested by Union Switch with the device of the Schmid patent. The report indicates that a coupler mount assembly must be able to withstand "continuous shock and vibration at low frequencies and high amplitude with peak loads to 20 g." We are of the opinion that Union Switch's train tests, which applied forces "in excess of 15 G's," sufficiently approximated the condition of "loads to 20 g" which Schmid indicates a coupler mount assembly must withstand on a non-cushioned rail car such as a freight car.

The Schmid report also concludes with the following:

> [The tests performed by Union Switch] are inadequate. They covered a total of only 414 miles at an average speed of 34 MPH (MAX 56 MPH) over flat terrain. I understand the Blosnick–Toms unit was never attached to a regular rail car, but was only tried on a caboose. A caboose rides smoother than a regular rail car, especially compared with an extended-length platform car at 70 or 80 MPH.

---

**1.** As evidence in favor of this proposition, DSL points not only to the offered evidence of Schmid, but also to a statement in the Blosnick application that need for their device was generated by "the recent removal of cabooses from the end of freight trains." Since the Blosnick application was not included in the documents filed in this court, we cannot verify the contents of the application.

First, we note that the statement that the tests covered "only 414 miles" appears to be an error, since the record clearly shows that Test Nos. 3, 4 and 5 covered over 700 miles. Secondly, and more importantly, the other factors referred to in Schmid's report relate to *how well* the device works, not to whether it works at all. DSL does not contend that the device of the Blosnick application was only intended for use with an *extended-length* platform car or at speeds of *70 or 80 miles per hour,* nor do we think it could reasonably so contend. The essence of Schmid's report is that the device he invented *works better* than the device invented by Blosnick and Toms. That may well be the case. However, that does not change the fact that (1) the device tested by Union Switch in May of 1983 fell within the scope of the count (a finding made by the Board, affirmed by the district court, and not contested here) and (2) the tests performed by Union Switch sufficiently establish that the device would work to hold equipment on a moving rail car, even if that rail car was not a caboose. This is sufficient to establish actual reduction to practice. *See Tomecek,* 513 F.2d at 618, 185 USPQ at 239.

■ With respect to the proffered testimony of Mr. Starr, some cases have held that events occurring after an alleged actual reduction to practice can call into question whether reduction to practice has in fact occurred. *See, e.g., Brown–Bridge Mills, Inc. v. Eastern Fine Paper, Inc.,* 700 F.2d 759, 765–66, 217 USPQ 651, 657 (1st Cir.1983). However, there is certainly no requirement that an invention, when tested, be in a commercially satisfactory stage of development in order to reduce the invention to practice. *King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 861, 226 USPQ 402, 407 (Fed.Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986); *Randolph v. Shoberg,* 590 F.2d 923, 926, 200 USPQ 647, 649–50 (CCPA 1979). A failure of several commercial devices allegedly made according to the Blosnick application long after the reduction to practice is insufficient to convince us that a device, meeting the limitations of

the count, was not adequately tested establish a reduction to practice.

For the above reasons, the decision of the district court is

AFFIRMED.