ELECTRIC BOOT & SHOE FINISHING CO. v. LITTLE et al.

(Circuit Court of Appeals, First Circuit. June 13, 1905.)

No. 568.

PATENTS—NOVELTY—PROCESS OF FINISHING BOOT AND SHOE SOLES.

The Crooker process, reissued patent No. 11,144, claim 1, for a process of polishing and finishing sole and heel edges and other parts of boots and shoes, is void for lack of patentable novelty in view of the prior art.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 75 Fed. 276.

Benjamin Phillips and Elmer P. Howe, for appellant.

Oliver R. Mitchell, for appellees.

Before PUTNAM and LOWELL, Circuit Judges, and BROWN, District Judge.

BROWN, District Judge. Claim 1 of letters patent No. 11,144, to William W. Crooker, dated February 10, 1891, is:

"(1) The improvement in the art of polishing and finishing sole and heel edges and other parts of boots or shoes, which consists in dyeing said parts or surfaces black and treating the said surfaces with wax or other resinous or waterproof compound, and polishing the same by contact with a rapidly moving yielding surface, substantially as described."

The complainant contends that this claim is for a novel and patentable process.

To color the surface of a material, and then to wax it and polish it by hand with a cloth or soft pad, is a proceeding so common that it requires satisfactory evidence to show that it was novel or involved invention to apply it to the finishing of boots and shoes. The complainant's argument is skillfully framed, and is based upon evidence produced for the purpose of showing the practical value of complainant's mode of finishing, and the previous attempts and failures of persons skilled in the art to attain a result as satisfactory as that of the complainant.

It is said that, in the prior art, the leather was colored by sediment stains which were not a true black; that to prepare the leather to receive such stains its fiber was raised by buffing; that when the stain had been applied it acted upon the leather partly as a true dye and partly by depositing insoluble particles on the raised fiber of the leather; that, in order to incorporate the sediment or insoluble parts of the stain with the leather and to bring out the final color, it was necessary to burnish the leather with a hard tool before the surface was ready for the wax polish; that in factories the burnishing step required expensive machinery, and had to be performed while the leather was in "temper," or in a suitably moist condition; that the use of a true dye prepared the leather for immediate polishing, and rendered unnecessary the usual step of burnishing, with its attendant inconvenience and expense for machinery.

The complainant contends, also, that the use of a dye obviated the necessity for preparing the leather by buffing, or raising its surface, and that this was a substantial advance in the art. This feature is not referred to in the specification, and we can attach little importance to it, in view of the patentee's testimony. He was asked, "As ordinarily practiced in the use of your process, is the preliminary buffing or sandpapering omitted?" and replied, "It is not."

Was it novel, and did it constitute invention, to dispense with the operation of burnishing?

A final polish secured by applying wax and rubbing it with cloths, pads, or brushes seems to have been as common a feature in the finishing of boots and shoes as in the polishing of floors or furniture. Novelty must be sought, therefore, in the mode of preparing the surface for polishing. The argument comes, in substance, to this: Crooker prepared his surface with an insoluble black dye, while in the prior art the surface was prepared by staining and burnishing. Crooker, however, was not the first to omit burnishing in preparing the surface of leather to receive a wax polish. The evidence shows clearly that leather had been treated with colored stains or dyes and immediately given a wax polish without resort to burnishing to incorporate the color with the leather, or to bring out the final color.

Assuming that dyed leather is as well prepared to receive a wax polish as leather stained and also burnished, it is still true that leather was commonly prepared for polishing by the use of stains or colored dyes, without burnishing. Mr. Folsom testifies that he used black coloring matter made of alcohol, water, logwood, and tincture of iron, and immediately finished the leather with a wax polish for the purpose of avoiding the expense of burnishing. We think the evidence such as to preclude a finding that Crooker was the first to suitably prepare the surface for polishing without resort to burnishing.

The complainant concedes that, in the use of sediment stains, the final color was produced partly by a dyeing action and partly by fixing insoluble particles to the fiber and rubbing them in with an iron. When the burnishing was omitted, however, as was the case, not only with the black stain described by Mr. Folsom, but with various colored stains and dyes, the process was substantially that of the patent in suit, so far as the avoidance of the expense of burnishing is concerned. It is, of course, impossible to avoid anticipation by limiting the claim to an aniline dye, or by saying that a blue-black dye is not a black dye. The black stain of Folsom was used by him simply as a black dye. The various other stains which were not burnished were used simply as dyes, and, although the color might have been different from or inferior to the complainant's, we find no patentable novelty in the mere substitution of a superior dye in a well-known process of finishing shoes without burnishing.

We are of the opinion that, in view of the prior art, there was no patentable novelty in what is claimed. The evidence as to commercial use and as to the importance of the Crooker process does not aid the patent. It clearly appears that what is done in practice is

something very much more specific than that claimed, and that the superior result of the so-called Crooker process is due to the use of a particular dye, specially selected wax, and a particular kind of polishing appliance which the patentee says "is necessary in order to be practical." Upon evidence as to the process actually used, as distinguished from that described in the patent, the Circuit Court was of the opinion that the specification was, for the purpose of deceiving the public, made to contain less than the whole truth relative to the invention, and hence that the patent must be held to be invalid under Rev. St. § 4920 [U. S. Comp. St. 1901, p. 3394]. We find it unnecessary to determine this question, since it is sufficient, for the purposes of the case, to say that the process described in claim 1 did not involve a patentable novelty.

On the whole, as dyes of all kinds, including aniline black, had previously been in public and general use for dyeing all kinds of materials, there was no invention in applying them, as distinguished from stains and pigments, to leather. It is admitted that picric acid is a dye, and had previously been applied to leather for obtaining a yellow color, the process of finishing being substantially the same as that disclosed in the patent in issue; and there could be no invention in substituting for picric acid aniline black after it came on the market. Indeed, from every point of view, what is claimed was within the common arts as generally practiced before the alleged invention of claim 1 of the Crooker patent.

The decree of the Circuit Court is affirmed, and the appellees recover costs of appeal.