**KWIK SET, Inc., v. WELCH GRAPE JUICE CO.**

**No. 118.**

Circuit Court of Appeals, Second Circuit.

Dec. 7, 1936.

Leonard S. Lyon, of Los Angeles, Cal., Richard W. Treverton, of Buffalo, N. Y., and Bean, Brooks, Buckley & Bean, of Buffalo, N. Y., for appellant.

George Mankle and Wallace R. Lane, both of Chicago, Ill., and John S. Powers, of Buffalo, N. Y., for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

This patent is for a "Dry Powdered Jelly Base Containing Pectin and Sugar and Process of Making Same," granted October 18, 1927. Claims 1 and 2 were held valid and infringed; they will be found in the margin.[1] Kwik-Set, Inc., v. Welch Grape Juice Co. (D.C.) 14 F.Supp. 137.

---

1. A jelly base which comprises a powdered pectin and a sugar, the quantity of a finely divided sugar present varying from an amount equal to the pectin to fifty times the amount of pectin substance.

2. A jelly base which comprises a dry powdered mixture of pectin, acid and a finely divided sugar, the ratio of sugar to pectin varying between one to one and fifty to one, and the ratio of acid to pectin varying from one to one to one to four.

Claim 1 describes a jelly base composed of powdered pectin and sugar, the sugar being finely divided and varying in proportion to the pectin in the ratio of from 1 to 1, 1 to 50. Claim 2 describes a jelly base composed of acid powdered pectin and finely divided sugar in a ratio of pectin varying from 1 to 1, 1 to 50, ratio of acid to pectin, of from 1 to 1, to 1 to 4. The only difference in the claims is the inclusion of acid in claim 2. The addition of acid is dependent on the absence of sufficient acid in the fruit juices which is utilized in jelly making. The claims are directed to a mixture such as will render the pectin readily soluble when used in the preparation of jelly.

The patent teaches nothing new about jellifying powder of pectin or the manufacture of jellies and jams. It depends for validity entirely on the alleged novelty of mixing sugar with pectin as a jelly base. The patent states that the sale of powdered pectin as a jelly was old, but it asserts:

"The powdered preparation offered generally contained pectin or pectinous substances and acid alone. Pectin is by nature a gum, and when wetted on the outer surface it requires much agitation to get it into solution. However, when powdered or granular, and added to water, or when water is added to it, it immediately forms into hard difficultly soluble lumps which take much unnecessary agitation to get into solution."

And, in order to avoid this difficulty, the patentee states he found that the disbursing substance or medium which would give the proper ratio of entering the solution to the pectinous substance was a finely granulated or powdered sugar. Thus the invention is for mixing pectin and sugar ground fine within specified ranges. The combination of pectin or pectose and sugar ground fine was old. Indeed, the court below said that:

"Camus and Jux & Ferrand, both teach the mixture of pectin with sugar to obtain solubility to form a jelly base. Both are within the ratio stated in claims 1 and 2."

The French patent No. 167,436 to Camus was granted July 15, 1885, and was entitled "Procedure for the extraction and concentration of the juices of fruits and vegetables." It describes the production of pectin from fruits and vegetables by the local precipitation process. The pectin is then dried and mixed with sugar in the proportions of 30 grams per kilogram corresponding to 33⅓ parts of sugar to one of pectin. This is within the limits of the ratios 1 to 1, 1 to 50, as defined in the claims in suit, and its product was used for the making of jellies and creams.

The French patent to Jux & Ferrand, No. 244,755, granted January 30, 1895, entitled "An Improved Process for the Manufacturing of a Concentrated Extract of the Juice of Fruits, Legumes and in General all Succulent Plants, for use in Making Jellies, Creams, etc.," describes a dry mixture of pectin and sugar much like the earlier Camus patent. The inventors direct that the sugar be added to a precipitated pectin prior to drying the pectin and that the mixture of sugar and pectin be then dried. The amount of sugar added by Jux & Ferrand is to be 50 grams of pectin per kilogram of sugar corresponding to 20 parts of sugar to one of pectin. This falls within the ratio of 1 to 1, 1 to 50, as specified in the claims here in suit.

■ But the argument is that the patent in suit is an invention combining "pectin, known to be pectin," with sugar, an improvement over combining a "supposed pectin" with sugar. This claim is of little force and surely does not rise to the dignity of inventive thought. The court below distinguished the two French patents, in that they did not contain "finely divided sugar," but a reading of the patent will not support this distinction. They speak of "mixed with sugar"; there was no restriction to the sugar being of any particular coarseness.

■ Assuming that the sugar contemplated to be used in the French patent is granulated sugar of the type employed by preservers and for table use and not the powdered sugar specified in the patent in suit, the patent cannot stand. The French patent to Jux & Ferrand directs that, after mixing the sugar and pectin, the mixture be pulverized and the resulting product would contain both powdered pectin and finely divided sugar. The product described by Jux & Ferrand comprises a dry powdered mixture of pectin and sugar in which the pectin and sugar are in pulverized form, and in which the ratio of sugar to pectin is within the ratio limits of the patent. The claims in suit do not limit the method of making the product and cannot be distinguished thereby. The product, being the same, cannot be patented wheth-

er made in an old or a new way. American Wood Paper Co. v. Fiber Disintegrating Co., 23 Wall. (90 U.S.) 566, 23 L.Ed. 31; Cochrane v. Badische Anilin & Soda Fabrik, 111 U.S. 293, 4 S.Ct. 455, 28 L.Ed. 433.

The court, however, said that, while sugar was known and used as a disbursing or dissolving agency in connection with the use of various other products, this would not deny patentability because "pectin is an entirely different product" and that its product, the court said, was unknown and its reaction when mixed with sugar in certain quantities "cannot be said to be such as would be reasonably anticipated by one skilled in the art of manufacturing these other products or using sugar in connection with them." It is well settled that the application of an old process to a similar or analogous subject without change in the method of application or in the result obtained will not sustain a patent. St. Germain v. Brunswick, 135 U.S. 227, 10 S.Ct. 822, 34 L.Ed. 122. Pectin and gelatin lump because they are both gums and their lumping is avoided by exactly the same expedient. It is not necessary that two materials be exactly the same to be regarded analogous in the eyes of the law. Powers-Kennedy Contracting Co. v. Concrete Mixing & Conveying Co., 282 U.S. 175, 51 S.Ct. 95, 75 L.Ed. 278; Electric Boot & Shoe Co. v. Little (C.C. A.) 138 F. 732.

The only purpose of using finely divided sugar is to have the sugar particles correspond in size with the particles of pectin so that they will not separate in the package and necessitate a shaking of the package before using. It is well known that fine particles would tend to settle out from larger particles, and to avoid this it was the obvious thing to do to use sugar particles of the same size as the pectin particles.

A patentee may not arbitrarily select a point in a progressive change and maintain a patent monopoly for all operations in that progressive change falling on one particular side of that arbitrarily selected point. It is only where the selected point corresponds with the physical phenomenon and the patentee has discovered the point at which that physical phenomenon occurs that the maintenance of a patent monopoly is admissible. A claim must be based on invention. The claim to invention depends here upon an alleged discovery of certain limits or points which do not exist in fact and there is therefore no invention. David Belais, Inc., v. Goldsmith Bros. S. & R. Co., 10 F. (2d) 673 (C.C.A.2); General Electric Co. v. Cooper Hewitt Co., 249 F. 69 (C.C.A.6); De Lamar v. De Lamar Mining Co., 117 F. 240 (C.C.A.9). Patentability cannot be supported on the theory of standardization, that is, the use of finely divided sugar in connection with powdered pectin and acid to render the pectin easily soluble.

Decree reversed.