**1324**

**CARTER–WALLACE, INC., Plaintiff,**

v.

**The GILLETTE COMPANY, Defendant.**

**Civ. A. No. 77–3186–MA.**

United States District Court,
D. Massachusetts.

June 15, 1982.

Herbert P. Kenway, Kenway & Jenney, Boston, Mass., for plaintiff.

Robert W. Furlong, Gregory A. Madera, and Frank P. Porcelli, Fish & Richardson, Boston, Mass., for defendant.

## SUPPLEMENTAL OPINION

MAZZONE, District Judge.

This matter was remanded to this Court to reconsider its finding of obviousness without giving any weight to the fact that the formula was arrived at by experimentation rather than inventive genius. *Carter-Wallace, Inc. v. The Gillette Company*, 675 F.2d 10, at 15 (1st Cir. 1982). I was also advised to review my finding on criticality as well because it was so intertwined with the obviousness issue. My original opinion was reported at 531 F.Supp. 840 (D.Mass. 1981).

█ The primary basis on which my opinion rested was the failure of Carter-Wallace to establish the criticality of the numerical limits of the patent in suit. Although the issue of criticality was subsumed in the discussion of obviousness, criticality was analytically distinct and so approached in the opinion. The line of cases beginning with *Helene Curtis Industries, Inc., et al. v. Sales Affiliates, Inc., et al.*, 233 F.2d 148, 152 (2d Cir.), *cert. denied*, 352 U.S. 879, 77 S.Ct. 101, 1 L.Ed.2d 80 (1956) and *Kwik Set, Inc. v. Welch Grape Juice Co.*, 86 F.2d 945, 947 (2d Cir. 1936), persuaded me that, in order to be patentable, a combination, such as the one described in the patent in suit, involving known ingredients performing their usual functions must achieve a result different in

*kind* rather than *degree* from the prior art. *See* 531 F.Supp. at 867–70, and cases cited. As I indicated in the opinion, neither inventor had been able to explain how the numerical limits of the patent in suit were determined. 531 F.Supp. at 869. In addition, no test data were introduced by Carter-Wallace to establish the criticality of those limits. *Id.* Under these circumstances, a finding of lack of criticality was required. My finding on this point was unaffected by the manner in which the Arrid formulation was developed and, in my judgment, was sufficient to support my invalidation of the patent in suit.

█ I regarded the discussion about obviousness that followed as unnecessary to my conclusion on the issue of validity. I attempted in that discussion to point out, *not* that the Spitzer formulation was unpatentable simply because it came about as a result of trial and error experimentation, but that the very process of routine experimentation which the inventors followed in this case had been rendered obvious by the teachings of the prior art. For example, as stated in the section of my opinion entitled: "THE TEACHINGS OF THE PRIOR ART," 531 F.Supp. at 851, the prior art (Yakubik in particular), taught that the relative concentrations of powder and oil in aerosol compositions was largely a matter of personal preference and that, in general, the use of oil in higher concentrations produced a wet, oily spray. The inventors in this case acknowledged that the selection of various proportions of oil and powder in

their test formulations was largely motivated by considerations of consumer preference—precisely as had been suggested by Yakubik. *See* 531 F.Supp. at 853–54. In short, the very process of routine experimentation which led to the invention had been suggested by the prior art,[1] a point I wished to make, but which was added only for the purpose of clarity and upon which I placed no significant weight in reaching my decision.

Of the factors which led me to the finding of obviousness, the "routine experimentation" factor was the least important. The fact that the numerical limits of the patent in suit overlapped those of the prior art, in and of itself, established a prima facie case of obviousness which Carter-Wallace failed to rebut. 531 F.Supp. at 870. Further, the use of large quantities of oil as the primary suspending medium in an aerosol anti-perspirant had been disclosed in the Yakubik and DeGiacomo articles, and, therefore, the very "essence" of the patent in suit had been disclosed by the prior art, a factor I regarded as most significant. 531 F.Supp. at 871.

*Conclusion*

The issue of criticality was dispositive. My findings on the issue of obviousness were merely explanatory, and were not greatly influenced by the manner in which Arrid was developed. In any event, my rulings on both obviousness and criticality would be the same even if this factor had not been considered at all.

1. The cases cited in my discussion of this issue support the view that, where the very process of routine experimentation which leads to the claimed invention is suggested by the prior art, this factor may appropriately be considered by the court in ruling on the question of obviousness. For example, in *Application of Aller*, 220 F.2d 454, 458 (C.C.P.A.1955), the court stated:

    Any chemist reading the [prior art reference] . . . could logically assume that higher yields might be obtainable, *and by experimentally varying* the conditions of temperature and acidity could find the most productive conditions . . . . the skilled chemist *who chose to experiment* with the reference process *would undoubtedly try the conditions* defined by the claims, although he might be surprised at the extent of the improvement obtained.

(emphasis added). Similarly, in declaring a patent invalid on the grounds of obviousness and lack of criticality, the court in *Duplan Corp. v. Deering Milliken, Inc.*, 444 F.Supp. 648, 741 (D.S.C.1977, *aff'd in pertinent part*, 594 F.2d 979 (4th Cir. 1979) (per curiam), stated:

    It was well within the ability of one of ordinary skill in the art to have discovered the temperature range disclosed by the [patent in suit] by the process of routine experimentation . . . . In short, the "lengthy experiments" that led to the 973 patent were the work of a skilled mechanic and not that of an inventor.

(citing *Hotchkiss v. Greenwood*, 11 How. 248, 266 (1851)).